GRIFFIN v. SOUTHERN RY.

1. LEGAL ISSUES—FRAUD—RELEASE—JURY.—Where an issue of release from liability and obtaining the same by fraud is raised in a law case, it is not error to submit that issue along with others to the jury.

2. PRESUMPTIONS.—DEATH is presumed by absence of person and of tidings from him in seven years.

3. DAMAGES—PUNITIVE—RECKLESSNESS.—That a train is run down grade around a curve at a rapid rate across rotten crossties, is some evidence of recklessness.

4. RECKLESSNESS—DAMAGES—CHARGE.—Under facts here, if Judge had charged that there was no evidence of recklessness, he would have charged on the facts.

Before BUCHANAN, J., Edgefield, March, 1902. Affirmed.

Action by Jose Griffin against Southern Railway. From judgment for plaintiff, defendant appeals.

*Messrs. B. L. Abney* and *E. M. Thomson,* for appellant, cite: *Judge should have heard equity issue:* 22 S. C., 77; 12 S. C., 98; 17 S. C., 544; 18 S. C., 232; 21 S. C., 402; 12 S. C., 54; 54 S. C., 155; 104 Fed. R., 754; 94 U. S., 207; 83 Fed. R., 437; 186 Penn. St., 145; 38 S. C., 199; 56 S. C., 514. *No proof of death of husband, and nonsuit should have been granted:* 42 S. C., 499. *No evidence tending to show punitive damages, nonsuit should have been granted as to that:* 65 S. C., 122; 19 Kan., 83. *If testimony of plaintiff would not support a verdict, nonsuit should be granted:* 26

S. C., 490. *Judge should have charged that there was no evidence as to punitive damages:* 26 S. C., 168; 47 S. C., 517.

*Messrs. J. Wm. Thurmond* and *S. McG. Simkins,* contra, cite: *Issue of fraud in obtaining release properly sent to jury:* 42 S. C., 92; 38 S. C., 211; 8 Ency., 651, 656; 26 Am. & E. R. R. C., 203; 3 Tex. Civ. App., 266; 33 S. C., 36; 38 N. J. L., 118; 4 Dem., 50; 3 S. C., 577; 25 L. R. A., 514; 60 U. S., 211; 70 Mo., 175; 127 Mass., 86; 145 Mass., 461; 112 Mass., 517; 148 Mass., 560; 63 Mich., 690; 68 Md., 377; 135 N. Y., 182; 36 L. R. A., 447. *Even if husband was alive, he was not a necessary party:* Code of Proc., 135; 12 S. C., 592; 5 Ency., 140; 2 Ency., 177. *Complaint alleges both negligence and recklessness, both issues must go to the jury:* 22 St., 693; 57 S. C., 28; 60 S. C., 48; 65 S. C., 489; 60 S. C., 74; 62 S. C., 331; 54 S. C., 509. *Whether a rate of speed is negligence is for jury:* 57 S. C., 205; *Kirby v. R. R.,* 63 S. C.

April 20, 1903. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This is an action for damages alleged by the plaintiff that she sustained by the wreck of the defendant's railway train on the 8th day of May, 1901, at a point a few miles from Trenton, Edgefield County, S. C. The answer denied all the allegations of facts set up in the complaint except the corporate character of the defendant, the accident to its train No. 135, on May 8, 1901, and that the plaintiff was a passenger for hire on said train at the time of the accident; but the answer insists that the plaintiff is a married woman, and that her said husband should have been united with her as a coplaintiff; and it goes on to allege that even if plaintiff as a passenger on its train was injured through such accident, she has for a valuable consideration, under her hand and seal, before this suit was brought, re-

leased the defendant from all liability on account of all damages and liabilities for said injuries. The defendant demanded of the Court before the trial before a jury was commenced, that the Court would order the cause to Calendar No. 2, for a trial of the equity issue, the legal issues awaiting a trial on Calendar No. 1 until the Court should dispose of the equity issue. This motion was denied by the Court. The trial before the Circuit Judge and a jury then began. Much testimony was offered by each party to the action, relating to the alleged death of plaintiff's husband; to the alleged speed of the train around the curve of its road-bed; to the bad condition of the road-bed by reason of rotten crossties at the place of accident; to the injuries received by the plaintiff in said wreck; to the fact that Mr. Thomas McCraney was the engineer running the train, and that he had managed the throttle for thirty-eight years, &c. At the close of plaintiff's testimony, defendant moved for a nonsuit, which was refused by the Circuit Judge. The trial Judge charged the jury, a verdict for $375 was rendered. A motion was then made for a new trial, which motion was refused. After entry of judgment, the defendant duly appealed to this Court on the following grounds:

"1. Excepts because the presiding Judge erred in refusing the motion of the defendant, made upon the trial of the cause, after the pleadings had been read, to hear and decide without a jury the equitable issues arising upon the pleadings, to wit: the validity of the release set up in the third defense of the answer, which release was admitted by the reply. Whereas, it is submitted that the issue thus raised, being purely equitable in its nature, should have been determined by the Court before proceeding further in the case.

"2. Excepts because the presiding Judge erred in refusing defendant's motion for nonsuit, which was based upon the grounds: First. That plaintiff had failed to offer any competent evidence to go to the jury that she had no husband living at the time of the commencement of this suit, or at the time of the alleged accident to plaintiff, but that, on the

contrary, the evidence showed conclusively that plaintiff was married prior to said 8th day of May, 1901, her husband having disappeared.   It being submitted that the evidence showing that seven years had not elapsed since the disappearance of the husband, and there being no competent evidence to go to the jury as to his death, the case should have been nonsuited or declared abated on account of the non-joinder of the husband.   Second.  That there was no evidence showing or tending to show any wantonness, wilfulness, recklessness or malice on the part of the defendant, and that so much of the complaint as charged wantonness, wilfulness, recklessness or malice, be nonsuited, restricting plaintiff to compensatory damages alone.   Third.  That the presiding Judge should himself have passed upon the validity of the release set up in the answer, and should have held said release valid and a bar to the suit.   Because, it is submitted, this was a purely equitable issue, and for the Court and not for the jury to pass upon.

"3.  Excepts because the presiding Judge erred in refusing to charge the jury as requested by defendant as follows: 'There having been no evidence offered showing or tending to show any wantonness, wilfulness, recklessness or malice on the part of the defendant, the jury cannot award any punitive damages in this case, but must confine their verdict to actual damages only.'   Said request, it is submitted, contained a correct proposition of law applicable to the case, and should have been charged, its refusal being to defendant's prejudice.

"4.  Excepts because the presiding Judge erred in charging the jury as follows: 'But if, in addition to that injury which she had received, it was done recklessly, wantonly and wilfully, then you are not confined to that, but you may go further, and give such an amount over and above the injury she had actually received as will be a lesson—not for her benefit necessarily, but for the benefit of all mankind.'   The error consisting in authorizing the jury to award punitive damages, when there was no evidence whatsoever to support

the same; the entire evidence being capable of but one infer-
ence, to wit: that defendant was guilty of no wantonness,
wilfulness, recklessness or malice."

We will now pass upon these questions in their order.

1. We think that the reply to that part of the answer
setting up the release, admitting that it was signed, but
denying any consideration therefor and alleging that it
was procured by fraud, and that notice had been
served by the plaintiff before suit was brought, did
not warrant the Court to grant defendant's motion.
The reply raised an issue or issues, which would have been
much more satisfactorily passed upon by a jury. Besides,
the Circuit Judge did all he ought to have done when he
charged the jury as he did as to the effect of the release:

"Now, when a person signs a written instrument, and it is
proven that he signed it, the presumption is that he signed it
knowingly. When one signs an instrument under seal, it is
presumed that he did it for valuable consideration, or suffi-
cient consideration. If a person does do so—if you sign a
release without any consideration at all, if one is entitled to
receive any thing, they have the right to dispose of it freely
and without getting anything for it in exchange, if they
desire to do it. If you have a horse or a plantation, etc.,
there is nothing on earth to keep you from giving this prop-
erty to any person you may see fit, if you desire to do so,
owing no man anything, saving your creditors—he can give
it to whom he pleases; and he can do it in the same way
with damages from a railroad company or any one else.
So, therefore, one need not to sustain a sealed instrument,
releasing his right to damages, show necessarily there was
any consideration; but having introduced a release, which
upon its face purports to be a release of his rights, then
the person who takes it must show if there is anything
wrong with it. Well, if one, however, enters into a sealed
instrument, which indicates that a payment of money was
contemplated before the release was to be effected, then
that payment of money should be made, or accounted for

6—66

in some way excusing the payment. When one owes or desires to pay money to another under an agreement, the money must be tendered. That means, I bring the money here and offer it to you, offering it to the person who is entitled to receive it; but if that person says you need not offer me that money, I won't take it, then the necessity of actually tendering it has passed, because he has waived it. If, however, Mr. Foreman, one man comes to you and showing you a paper, which you cannot read, or in language you do not understand, telling you it is one thing when another, and by fraudulent representations gets you to sign it when you think it is something else, then the law says that the fraud will invalidate everything. There is a maxim which says that fraud is odious and is never to be presumed. If you conclude that she signed this paper knowing what she was doing, with her eyes open, that she signed it under no misapprehension, no fraudulent representations, was not overreached, but did it for the consideration mentioned in the release, and that she was tendered the money, then you may stop and write your verdict for the defendant. But if you find that she was overreached, or that that instrument was obtained from her under fraud, by fraudulent representations, that she did not consent to it, then you will go one step further and find out whether the plaintiff has proven her case here, as charged in the complaint."

It seems to us that substantial justice was done here. Besides, *Price* v. *R. R. Co.,* 38 S. C., 199, 17 S. E., 286, is very significant just on this point.

2. (a) There is no fixed way of proving death. An absence of seven years will enable you to presume death. Very frequently, though it is a rule the law has adopted, that a man may be presumed to be dead in case of an absence of seven years with no tidings of him, yet a man is alive after the seven years have expired. Still experience proves that it is a wise rule. To recur to proof of death. We have said there is no fixed rule. The evi-

dence must satisfy the jury of the husband's death. It seemed to have done so in this case.

(b) Now in all candor we must say there was some testimony as to recklessness. The defendant allowed this train to be run down grade around a curve with crossties which were rotten, and so appeared to the eye of ordinary people, not experts. Such an engineer as Mr. McCraney, who is known far and wide as one of the best engineers on the railroad, had to take the word of the railway officers that the track was sound. So that we cannot say there was no testimony as to wantonness, &c., by the railway. The jury had to weigh this testimony. They have done so. The Judge made no mistake here.

(d) We have already held that the Circuit Judge was justified in giving the testimony to the jury as to the release. He charged the law correctly to the jury.

3. We have already held that there was *some testimony* as to recklessness by the railway in keeping such a track as they did at the point of the accident. The Court could not have charged as requested, in view of this testimony. The proposition of law in the form it was presented to be charged would have made the trial Judge invade the constitutional restriction by charging upon the facts. There was no error here.

4. The Judge left it to the jury to apply the facts as found by them to the law which he gave them. He did not err herein.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY, *concurring.* While concurring in the conclusion announced in the opinion of Mr. Chief Justice Pope, we prefer to express, in our own language, our views upon the question raised by the first exception, whether the Court in the exercise of its chancery powers should have decided whether the release

was fraudulent. It is erroneous to suppose that the Court in all cases has jurisdiction of fraud, only when exercising its equitable powers. Mr. Pomeroy, in sec. 911, vol. 2, of his philosophical work on Equity Jurisprudence, thus states the fundamental principles concerning the equitable jurisdiction: "(1) Where the primary right or interest of the plaintiff is equitable only, the jurisdiction is necessarily exclusive, and will always be exercised without regard to the nature of the relief; otherwise the party would be without remedy, since Courts of law could not take cognizance of the case. (2) Where the primary right is legal and the remedy sought is purely equitable, the jurisdiction is also exclusive and always exists, but will not generally be exercised if the legal remedy which the party might obtain is adequate, complete and certain. (3) Where the primary right is legal and the remedy is also legal, a recovery of money simply or of the possession of chattels, the jurisdiction is concurrent, and only exists where the remedy which the party might obtain at law is not adequate."

The case of *Moore* v. *Edwards*, 1 Bailey, 23, involved the question whether a court of chancery alone could relieve a party from mistake. The Court thus states the rule: "Accidents and mistakes certainly constitute one branch of equity jurisdiction; but it is not peculiar except when a discovery is indispensible or the nature of the relief such as to require the extraordinary aid of chancery. Actions at law to recover back money paid by mistake, constitute in all the books of practice a conspicuous class of causes for which the action of assumpsit may be maintained at law; and there is no question that in general, when the facts can be proved according to the rule of the common law, and the remedy is such as a court of law can administer, consistently with the prescribed modes of proceeding, mistakes may be inquired into in a court of law. In the case under consideration, the plaintiff sued out a *sci. fa.* to revive a judgment against the defendant, and as evidence of payment the defendant produces an execution on which is indorsed the

word 'satisfied,' the plaintiff replies it was so indorsed by mistake. There is nothing magical in the term itself. The evidence offered was admissible according to the rules of the common law, the relief was such as a court of common law was competent to give, and the Court, therefore, clearly had jurisdiction."

The rule here stated is equally applicable to cases of fraud, as is shown by the case of *Maddox* v. *Williamson*, 1 Strob., 23, in which the Court says: "An assignment no more than a deed can in a court of law be set aside and cancelled—but when either deed or assignment comes into question in an issue here, it will, if fraudulent and void, be for the purposes of that issue regarded as a nullity." The last mentioned case is cited with approval in *McKenzie* v. *Sifford*, 45 S. C., 496, 23 S. E., 622.

These authorities cleary show that there was no error in submitting the question of fraud to the jury.